[No. 9437.   Department Two.   August 4, 1911.]

JENNIE F. READY *et al.*, *Respondents*, v. SOUND INVESTMENT COMPANY, *Appellant*.[1]

TAXATION—TAX SALES—LIENS—VENDOR AND PURCHASER—TITLE OF VENDOR.  Under Laws 1891, p. 167, § 5, providing that purchasers at tax sales prior to November 1891 shall have no lien on the property as against purchasers in good faith, unless they file their tax certificates or deeds for record on or before the first day of November 1892, a sale for taxes in 1884, not recorded as required, does not constitute a defect in the title and a vendee cannot rescind a sale on account thereof.

VENDOR AND PURCHASER — CONTRACTS —'PERFORMANCE — TITLE OF VENDOR—UNPAID TAXES.  The vendee's default in the first payment on a land contract is not excused by objections to the title going only to small sums for taxes and assessments which were not yet delinquent, where the contract gave the vendor until that time to cure the defects, and he had been notified by the vendee that the vendee would have to default in the payment, after which nothing further was done by the vendee toward acquiring the property; and the vendee cannot thereafter recover a deposit on the ground of defect of title without offering to perform.

Appeal from a judgment of the superior court for King county, Yakey, J., entered September 23, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

*Ira Bronson*, for appellant.

*Jay C. Allen*, for respondents.

MORRIS, J.—Action by respondents to recover back money paid upon a contract for the purchase of real estate.   The contract was entered into February 14, 1907, and fixed the price of the land at $35,000, $2,000 of which was paid at the time, $14,000 was to be paid upon the delivery of deed within sixty days, and the balance was to go as a mortgage, bear-

[1]Reported in 116 Pac. 1093.

ing interest at six per cent. Abstract was to be furnished, showing good title and freedom from liens; defects, if any, to be pointed out in ten days after receipt of abstract; and if the claimed defects could not be cured and the title made good, the $2,000 was to be refunded. Time was of the essence, and the $2,000 was to be forfeited if the second payment was not made in time; providing, of course, the title was good, or could be made good within the life of the contract. Appellant furnished an abstract, and respondent had same examined and, on March 5, procured an opinion from the examining attorney suggesting three defects by way of incumbrance: (1) That the property had been sold for unpaid county taxes in 1884; (2) that the taxes for 1906, amounting to $318, had not been paid; (3) that a special assessment in the sum of $56.61 for sidewalks had been laid against the lot, payable in five annual installments, the first of which would become delinquent in February, 1908. A copy of this opinion was handed appellant.

A few days before the sixty days expired in which the second payment was to be made, Mrs. Ready notified appellant she would be unable to make it, and requested an extension of thirty days. The result of these negotiations was a written offer by appellant, dated April 16, to extend the payment of the $14,000 an additional thirty days, conditioned upon respondent then making the payment $15,000 with interest at six per cent. This respondent declined to do, and on the same day filed the contract for record. At that time the taxes and local assessment had not been paid. Nothing more seems to have been done by either party, except that on May 13, 1907, appellant paid the taxes, and on June 22, the local assessment; until about September, 1909, when appellant tendered a deed to respondent and demanded the deferred payment, which respondent refused. She thereupon brought this action to recover the $2,000, and obtained a judgment, from which this appeal is taken.

The finding upon which judgment was based was the sale

for county taxes in 1884, and the failure to pay the taxes
and local assessment within the sixty days, for these reasons
appellant's title being held defective.   The respondent, not
having performed, nor offered to perform, her part of the
contract, could not recover, unless performance on her part
was excused by reason of defects in the title claimed to be
shown by the abstract.   We must, therefore, first determine,
were there such defects as to excuse performance on her part.
Under its agreement, appellant was bound to furnish a good
title or clear the property from any claimed defects within
sixty days from its date.   So far as the abstract showed,
there were no defects against this title which could not have
been easily cleared up.   The sale for the county taxes in
1884 was not shown as a present lien, because the abstract
failed to show a compliance with § 5, chap. 85, p. 167, Laws
1891, providing that:

"Purchasers of real estate at tax sale prior to the first day
of November, 1891, shall have no lien against said real estate
for the amount of their payments, nor any title to said land,
as against purchasers or incumbrancers for value and in good
faith, unless they shall duly file their certificates of purchase,
or tax deeds in case the same may have been issued, for record
in the office of the county auditor on or before the first day
of November, 1892."

No certificate of purchase or tax deed having been filed as
required by the above act, the property was not subject to
any lien created by the sale; and the sale alone, not being a
lien, could offer no excuse to respondent.   The taxes and local
assessment, while due, did not become delinquent until June 1
and February 12 following, and appellant was not required
to pay them except as within the terms of the contract, on or
before April 16.   The purpose of this provision was to insure
these payments by appellant, and as respondent was to pay
$14,000 to appellant within the same time, she had it within
her own power to compel appellant to convey the property
free from any burden of these liens.   Respondent had, how-
ever, notified appellant that she would not be able to make

the payment on April 16, and requested an extension of thirty days. Her refusal to make the payment, and her notification to appellant that she would not do so, would excuse any further performance on its part. Had she accepted the extension, such extension would have operated to the benefit of appellant as well as respondent, and it would not have been required to do anything further until the expiration of that time.

It is apparent from this record that it was not the failure to pay the taxes and local assessment that caused respondent to abandon this purchase, but her failure to obtain the money with which to make the $14,000 payment, or to obtain a satisfactory extension. Having notified appellant, prior to April 16, of her inability to make the payment and her wish for an extension, the law would hardly, with such a knowledge on its part, require the doing of a useless thing by appellant, and require it to make a payment of this tax and local assessment in order to clear a title not required, if at all, for thirty days. If respondent could not pay within the sixty days, and so notified appellant, it would excuse its further performance within that time. Had she obtained an extension, it would have waived it, because the covenants were mutual and dependent. *Kane v. Borthwick,* 50 Wash. 8, 96 Pac. 516, 18 L. R. A. (N. S.) 486; *Martin v. Pierce,* 57 Wash. 389, 106 Pac. 1127.

The payment of the taxes was comparatively a small matter, and as appellant was to receive a payment from respondent of $14,000, there could be little if any question concerning its willingness and ability to perform that part of its contract, a performance which respondent, by virtue of the $14,000 payment, had at all times within her power. It was her default rather than appellant's that breached this contract; and such being the case, it was immaterial that these small defects existed against this title, which could have been removed at almost a moment's notice. *Johnston v. Johnson,* 43 Minn. 5, 44 N. W. 668; *Hampton v. Speckenagle,* 9 Serg.

& Rawle 212, 11 Am. Dec. 704; *Irvin v. Bleakley*, 67 Pa. St. 24; *Boyd v. McCullough*, 137 Pa. St. 7 (*Johnson v. Hopwood*), 20 Atl. 630. It is clear it was not the unpaid tax and local assessment, but her inability to make the $14,000 payment, that caused respondent to decline to proceed further. Her subsequent conduct is further proof of this fact. She took no step toward acquiring the property when the tax and assessment were paid shortly thereafter. She abandoned the contract and the property for two and a half years, and until after appellant tendered its deed and demanded the deferred payment, about September, 1909, before commencing this action. She could not then, never having performed nor offered to perform, put appellant in default so as to maintain this action. The time fixed in the contract having passed with no performance, nor offer to perform by either party, the time of performance became indefinite, although still remaining mutual and dependent; and neither party could put the other in default without an offer to perform.

We cannot reach the same conclusion as the trial judge, and the judgment is reversed.

Chadwick, Ellis, and Crow, JJ., concur.