[No. 24741. Department Two. December 4, 1933.]

THEODORE WEISBERGER, *Appellant,* v. ROE M. SMITH *et al., Respondents.*[1]

*Shumate & Clarke,* for appellant.

*Grady & Velikanje* and *Stanley P. Velikanje,* for respondents.

[1]Reported in 27 P. (2d) 324.

TOLMAN, J.—Appellant, as plaintiff, brought this action to recover money paid on an executory contract for the purchase of real estate, plus the value of improvements and betterments, which contract, he alleged, had been rescinded. A trial on the merits resulted in a judgment denying relief, and from that judgment the plaintiff has appealed. The facts, stated somewhat generally, are as follows:

On September 28, 1922, appellant purchased, under executory contract, a residence property in the city of Yakima for a consideration of eight thousand five hundred dollars. A small sum was paid down, a mortgage was assumed, and the balance was made payable in installments. The only unusual provisions of the written contract of purchase were to the effect that, when a certain amount had been paid, the seller would convey the title to the purchaser and take back a mortgage to secure the unpaid balance, and

"The vendor agrees that before final deed is given the purchaser that she will have a survey made in order to describe the exact location of the Naches and Cowychee Ditch upon said property in said deed. The vendor agrees to furnish an abstract of title upon the giving of deed and receipt of mortgage, certified to by some reliable abstract company, showing a marketable title in her, said abstract after examination by the purchaser shall be held by the vendor until said mortgage shall be fully paid and discharged by the purchaser.

"The vendor reserves the right at any time to mortgage the premises described herein to an amount not to exceed three thousand dollars, provided," etc.

On February 28, 1923, a supplemental agreement was entered into reciting that seven thousand dollars of the purchase price remained unpaid; that the seller had or would execute a mortgage to a third party covering the premises to secure the payment

of three thousand dollars; that the purchaser, without assuming that mortgage, would make the installment payments thereon necessary to meet the interest and retire the principal of the mortgage, and that due credit would be given for all payments so made. The rate of interest on the remaining four thousand dollars of the purchase price was reduced.

Thereafter, appellant entered into a contract to sell the property to the defendants Yeats on terms which, if performed, would meet the requirements of the original contract and return to appellant practically the principal which he had theretofore paid on the purchase price. Respondent Smith, in writing, consented to the contract, but expressly provided that such consent should not release appellant from any of the obligations theretofore assumed by him.

Thereafter, on October 17, 1930, another supplemental agreement was executed, to which Yeats and wife were also parties, which agreement extended the payment of the four thousand dollars of the purchase price not covered by the mortgage above mentioned to June 28, 1931, and also,

"It is agreed and understood that upon the expiration of the extension period as herein provided, and the reorganization of the sale of the within described property as herein set forth, the said vendor will take as part payment a second mortgage, subject only to a first mortgage against said property not to exceed $5,000, which said second mortgage shall be for not more than $500, due on or before one year, with interest at 7% per annum, payable monthly, and said principal being payable twenty-five dollars ($25) or more, per month, but it is agreed and understood that the whole sum so secured by said second mortgage shall be paid within one year from June 28, 1931."

Payments were made with more or less regularity. No default occurred in the installment payments on

the three thousand dollar mortgage provided for in the first supplemental agreement, and taxes were paid up to and including the first half of the taxes for 1930, due in the spring of 1931. As the time approached when the final payment of the four thousand dollars would be due, respondent Smith made it very plain that she would insist upon full performance according to the terms of her contract. She denied several requests for further extensions, and appellant was well informed as to her attitude. On this subject, the trial court, in his memorandum opinion, said:

"The time for the final performance of the contract on the part of the plaintiff and Mr. Yates, who had made an agreement of purchase from the plaintiff, was drawing near. They were both being urged by the defendant Roe M. Smith and her attorney to be in a position to complete the agreement. In spite of this, no effort, as I read the testimony, was made by them to be in a position to comply with its terms. Rather, they stated their inability to do so. Mr. Velikanje, the attorney who was handling Mrs. Smith's affairs, testified that in the forepart of June he told the plaintiff and Mr. Yates that if the payment was not made the contract would be forfeited; that during June Mr. Weisberger said he could not make the final payment, and that Mr. Yates also told him that he (Yates) could not raise the money. He further testified that he saw the plaintiff four or five times before the forfeiture and that he saw Yates dozens of times before the forfeiture, and each time they said they could not raise the money, and wanted Mrs. Smith to make different arrangements. This, it seems to me, establishes their inability to perform the agreement, and made the tender of the deed unnecessary."

The contention principally urged and relied upon by the appellant is based upon a long line of decisions by this court, beginning with *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424, and continuing down to *Carter v. Miller,* 155 Wash. 14, 283 Pac. 470, which

lay down the general rule that a vendor cannot forfeit such an executory contract for default in meeting the final installment without tendering a deed and demanding the payment. Here, of course, if it was necessary to tender a deed, it was also necessary to tender performance of the conditions of the contract as to a survey and the furnishing of an abstract.

The rule is well settled, and the exceptions to the rule are equally well settled. We have repeatedly held that, when it appears that the vendee cannot, or will not, perform, a tender would be a useless and idle thing, such as the law never requires to be done. *Bruggemann v. Converse,* 47 Wash. 581, 92 Pac. 429; *Kane v. Borthwick,* 50 Wash. 8, 96 Pac. 516, 18 L. R. A. (N. S.) 486; *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257; *Bodin v. Wilcox,* 129 Wash. 208, 224 Pac. 558.

The question to be decided thus becomes a question of fact; and after reading and weighing all of the testimony upon the subject, we are constrained to adopt the views of the trial court as expressed in the excerpt from his opinion already quoted.

The giving of the notice of forfeiture without the tender of a deed under the conditions shown was not a rescission of the contract, but was an attempt to enforce it. *Hansbrough v. Peck,* 72 U. S. 497, 18 Law Ed. 520.

It seems to be urged that, because of the provision in the supplemental contract of October 17, 1930, the vendor became bound to procure a mortgage loan against the property in a sum sufficient to cover the balance due, less five hundred dollars, for which she would be bound to accept a second mortgage. We have read and considered all of the terms of all of the contracts, and find nothing in any of them which places such a burden upon the vendor;

and, of course, it would be a real and substantial burden, because she would have become personally liable for the mortgage debt.

Considering the terms of the original contract, together with both of the modifying supplements, and reading the particular provision which we have already quoted in connection with the remaining terms of the contract, convinces us that the provision referred to placed no affirmative duty upon the vendor, but merely granted a privilege to the vendee permitting him to refinance the unpaid portion of the purchase price if he could and if he would. The only duty placed upon the vendor was to cooperate with the vendee so that title might pass at the proper time to be available to him in the giving of such a mortgage. It seems clear from the record that no one would loan three thousand five hundred dollars on the property in June, 1931, and, of course, the respondent was not responsible to the appellant for the shrinkage of values or for the lack of a mortgage market at that time.

The views we have expressed indicate that the judgment must be affirmed, and render it unnecessary to discuss other questions which have been presented.

Judgment affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.