[No. 25138. *En Banc.* December 3, 1934.]

NORMA ADAMS DAVIS, *Respondent,* v. C. E. DOWNIE INVESTMENT COMPANY, *Appellant.*[1]

*Allen, Froude & Hilen,* for appellants.
*Robert A. Devers,* for respondent.

TOLMAN, J.—On March 25, 1927, respondent, as vendor, entered into an executory contract with the appellant, as vendee, for the sale and purchase of certain real estate in King county. The written contract provided for the payment of the purchase price in installments, and for the delivery of a deed to the vendee upon payment of the last installment. Time was made of the essence of the contract, and it was further provided therein that the contract might be cancelled

[1]Reported in 38 P. (2d) 215.

and the vendee's rights forfeited in the event that any of the terms of the contract were breached by it.

The final payment became due by lapse of time according to the terms of the contract on March 25, 1932; and in addition to the principal sum, there was also interest due, and two years taxes, which the contract required the vendee to pay, remained unpaid, past due and delinquent. The contract thus being fully matured by lapse of time, on May 2, 1932, the vendor in writing notified the vendee of an election to forfeit unless the amounts due were paid on or before May 12, 1932. The terms of the notice, so far as here important, are:

"You are hereby notified that you are in default . . . in that you have failed to pay the taxes, interest, and the principal payment due March 25, 1932.

"You are further notified that unless you pay said sums on or before May 12, 1932, the seller will elect and does hereby elect to declare a forfeiture and cancellation of said contract and of all of your rights thereunder."

Nothing was done by either party following the service of this notice. The vendor took no steps to regain possession of the property or to exclude the vendee therefrom, nor did she attempt to exercise any dominion over it, and the vendee took no steps to cure its default or to comply with the terms of the contract in any way, or at all. No deed from the vendor to the vendee was tendered on May 12, 1932, or at any time prior to August 5, 1932. On the last mentioned date, the vendor tendered to the vendee a good and sufficient deed, and demanded the payment of the balance due under the contract. Again nothing was done by the vendee, and in a few days time this action was instituted. In the complaint, the contract was pleaded, the so-called notice of forfeiture was pleaded, and, in addition, it was alleged:

"That plaintiff has offered and tendered conveyance of said property to defendant as in said contract provided and has demanded of the defendant payment of the balance due under said contract."

The prayer was that the contract be cancelled and terminated, that defendant be decreed to have no right, title or interest in or to the real property, and for general relief.

To this complaint, the appellant answered, admitting the service of the so-called notice of forfeiture on May 2, 1932, and

"Admits that thereafter plaintiff demanded of defendant payment of the balance due under said contract and tendered a deed to the defendant."

All other allegations of the complaint were denied, and it was affirmatively pleaded as a defense: (1) That the time had been extended for the payments due under the contract; (2) that the vendor did not tender to the defendant any deed to said premises on or prior to May 12, 1932; and (3) it was pleaded:

"The plaintiff waived the notice of forfeiture which had been given to this defendant on May 2, 1932, and on or about said August 5, 1932, demanded from the defendant the balance due under said contract, notwithstanding that said sums were not then due, and tendered a conveyance of said property to this defendant in the form of a deed from the First National Bank of Seattle; that such demand constituted an election on the part of the plaintiff to waive said notice of forfeiture, and the same has been waived by the said plaintiff."

An alternative cross-complaint was also interposed, which pleaded that, if the plaintiff by making the demand for the balance of the purchase price on August 5, 1932, and then tendering a deed, did not thereby waive the notice of forfeiture theretofore given,

". . . then the defendant hereby elects to treat the said contract as mutually rescinded by reason of

the acts of the plaintiff set forth in the first and second affirmative defenses of this answer, all of which allegations are hereby made a part hereof as though set forth at length herein.''

The affirmative defenses and the cross-complaint were attacked by motion to strike, and in due course the cross-complaint was ordered stricken; but, as we shall see, the ruling is not now of vital importance, because it failed to state a cause of action.

A trial was had on the merits, and a judgment followed terminating the contract and divesting the defendant of all right, title or interest in the property, forfeiting all payments theretofore made by the vendee, and quieting title to the property in the plaintiff. From that judgment, this appeal is prosecuted.

Stated as briefly as possible, it thus appears and must be constantly kept in mind that the contract here in issue was fully matured by lapse of time, and that time was expressly made of the essence of the contract; and further, that the contract, by its terms, gave to the vendor the privilege of electing to forfeit all installments paid in the event of default in making any payment when due.

It is well settled, of course, that, under such conditions, when all payments have matured, the vendor is under the duty of tendering a deed, or performance on his part, before the vendee can be put in default. *Stein v. Waddell,* 37 Wash. 634, 80 Pac. 184; *Bruggemann v. Converse,* 47 Wash. 581, 92 Pac. 429; *Tacoma Water Supply Co. v. Dumermuth,* 51 Wash. 609, 99 Pac. 741; *Christy v. Baiocchi,* 53 Wash. 644, 102 Pac. 752; *Reese v. Westfield,* 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956; *Gottschalk v. Meisenheimer,* 62 Wash. 299, 113 Pac. 765, 115 Pac. 79; *Gibson v. Rouse,* 81 Wash. 102, 142 Pac. 464.

Consequently, it follows that the so-called notice of

forfeiture served on May 2, 1932, without the tender
of a deed by the vendor at the time fixed therein for
the payment, became ineffectual as a notice of forfei-
ture, and ineffectual for any purpose unless acted upon
in some way by one or the other of the parties to be
affected thereby. It does not appear from this
record that either party acted upon the notice re-
ferred to.

It is quite plain from the issues tendered by the ap-
pellant in the court below that it did not tender pay-
ment, nor did it tender back the right to possession,
the title insurance which it held, or in any wise ac-
quiesce in the notice or recognize it in any way. As
appears from the record, it kept absolute silence with
respect to this notice, did not change its position be-
cause thereof, and awaited further action on the part
of the vendor. Nor did the vendor do any act under
the notice of May 2, 1932. She did not seize posses-
sion of the property, oust the vendee therefrom, take
possession of escrow documents, or make any move
whatever to change her position on account of, or be-
cause of, the giving of the notice. It would seem,
therefore, that the notice of May 2, 1932, was wholly
abortive; that the contract was left in full force and
effect; that the vendee might thereafter at any time
have cured its default by tendering payment; and that
the vendor might thereafter at any time proceed to put
the vendee in default by tendering a deed and de-
manding the payments which were overdue.

Our previous decisions do not appear to have dealt
very clearly, if at all, with a situation such as is here
presented. In the case of *Lea v. Young,* 168 Wash.
496, 12 P. (2d) 601, this court dealt with the distinction
between a forfeiture and a rescission. As that case
defines rescission, it seems quite clear that there is
no element of rescission in this case. Nor do we see

anything in the case of *Gibson v. Rouse,* 81 Wash. 102, 142 Pac. 464, which can be taken as authority against our present views. There, the vendor, after having placed three mortgages upon the property to secure his own obligations, took affirmative action by withdrawing documents from escrow without right, at a time when he was in no position to convey. What is said in that case could only be applicable here if the vendor, following the notice of May 2, 1932, had seized possession, ousted the vendee, or performed some other like act evidencing a clear intention to arbitrarily end the rights of the vendee in the property.

In other states, the distinction between an abortive attempt to forfeit and a rescission is made very clear, and the rule is not in doubt.

*Boone v. Templeman,* 158 Cal. 290, 110 Pac. 947, deals with a situation similar to the one which we have here. There, there was an invalid attempt made to declare a forfeiture without the tender of a deed. The California court, in passing upon the effect of such an attempt, said:

"Templeman did not declare a forfeiture, nor take any steps toward doing so until July, 1906, more than a year after the last payment became due. He could not at that time, put Boone in default as to any of the payments so as to work a forfeiture, without tendering a conveyance of the land. Until Boone was in default there was no right of forfeiture. He attempted to declare a forfeiture without tendering a deed. Having, by his conduct, waived the right of forfeiture for nonpayment of the installments at the precise date of maturity, he could not, after the whole became due, revive or renew it without previous notice accompanied by a tender of a deed. Upon the face of the complaint we hold that the contract is still subsisting."

This is a direct holding that the attempted forfeiture was wholly abortive, leaving the contract in exactly the same condition as though nothing had been

done or attempted to be done. This rule was followed in *Bank of America of California v. Ries,* 128 Cal. App. 75, 16 P. (2d) 1018.

The *Boone* case, *supra,* cites with approval the case of *Milwaukee Land Co. v. Ruesink,* 50 Mont. 489, 148 Pac. 396, in which case the Montana court said:

"The attempt by the plaintiff to declare a forfeiture was abortive. Conceding that it might have done so upon failure of Way & Rachford on demand to pay the first deferred installment when it fell due, after extending to the firm indulgence until the last installment was due, it could not terminate the contract without tendering a conveyance or at least accompanying the demand for payment with an offer to convey."

Perhaps the case which comes closest upon the facts is that of *McLain v. Smith,* 201 Iowa 89, 202 N. W. 239; the main distinction being that, in that case, the vendor was unable to perform at the time of his attempt at forfeiture, while in this case, so far as appears, the vendor was amply able to perform and simply failed to tender performance. Also, in the Iowa case, it would appear that the vendee promptly demanded a return of the purchase money and promptly brought its action claiming a rescission. The supreme court of Iowa held that the attempted forfeiture was not a rescission, saying:

"The fact that vender gave notice of forfeiture herein cannot be looked upon or treated as an act of rescission, or any declaration or election to rescind; as there is a wide difference between forfeiture and rescission."

The *McLain* case was followed in *Mintle v. Sylvester,* 202 Iowa 1128, 211 N. W. 367. There, the court said:

"The defendants did not, by the notice of intention to declare forfeiture, or by their petition in the suit to quiet title, evince an intention not to be bound by

the contract. They were not putting it out of their power to perform. They were not repudiating the contract. They were affirming it, and demanding performance by plaintiff. Their claim to possession was based ostensibly on the terms of the contract, and was not in hostility to it. The existence and validity of the contract were not denied. The defendants' right to give the notice and to proceed under the statute and to declare a forfeiture was not denied until the commencement of this action, and after the decree was rendered in the suit to quiet title. A breach or an unauthorized demand not amounting to an intimation of intention to be no longer bound does not of itself free the other party from his obligation, or authorize him to rescind.''

Still later, the same rule was followed in the Iowa court in *Golly v. Grinnell College Foundation,* 204 Iowa 319, 213 N. W. 252. See, also, *Shupe v. Thede,* 205 Iowa 1019, 218 N. W. 611.

The question has also been passed upon by the supreme court of Arizona in *United Farmers' City Market v. Donofrio,* 29 P. (2d) (Ariz.) 144, where a somewhat exhaustive review is made of the authorities. In that case, the Arizona court said:

''Under these circumstances we think the complaint wholly fails to show any attempt or intention on the part of plaintiffs up to the time of filing this action to rescind the contract, but rather an intention to stand thereon, unless it be held the mere giving of a notice of forfeiture where time is not specifically made of the essence of the contract, regardless of the circumstances of the case, is as a matter of law a rescission by the vendor. We have examined the cases cited on this point by counsel for defendant, such as *Gaume v. Sheets,* 181 Cal. 119, 183 P. 535; *Epplett v. Empire Inv. Co.,* 99 Or. 533, 194 P. 461, 700; *Cornelly v. Campbell,* 95 Or. 345, 186 P. 563, 187 P. 1103, and while in some of them the bald statement is made that an unauthorized declaration of forfeiture is in effect an attempt to rescind which, if accepted by the vendee, con-

stitutes a mutual rescission, the facts in each case show the rule as stated is broader than required for the decision of the particular case. We think the true rule is more correctly stated in the cases such as *Pinkerton v. Morton,* 63 Cal. App. 471, 218 P. 770; *McLain v. Smith,* 201 Iowa 89, 202 N. W. 239; *Rea v. Security Trust & Savings Bank,* 129 Cal. App. 663, 19 P. (2d) 267; and *Oursler v. Thacher,* 152 Cal. 739, 93 P. 1007, 1009, to the effect that the test is the intention of the parties, to be determined by all their acts, and that an attempt to act in pursuance of a contract, even though the actor has mistaken its true meaning, is an affirmance rather than a rejection thereof. As was said in *Oursler v. Thacher, supra:*

" 'The stipulated facts here warrant no inference but the one that plaintiffs have done no more than to insist that, under the terms of the contract, defendants had no further rights under such contract, but had forfeited all such rights. Their notice of forfeiture and demand for possession of the mining property were strictly in line with this claim, and were in no sense a repudiation or abandonment of the contract or a consent to a rescission thereof, any more than was the refusal of the vendor to convey in *Glock v. Howard, supra,* an abandonment or a consent to a rescission. The bringing of the action to quiet title was an act of the same character. Practically it amounted to no more than the calling of the defaulting vendees into court to show why it should not be decreed that under the terms of the contract all their rights thereunder were at an end. In the absence of some sufficient equitable showing to excuse their failure to comply with the terms of the contract, plaintiffs, while standing on their contract, were entitled to such a decree, so as to cut off the possibility of any future claim by the vendee to equitable relief, which might embarrass or cloud his title. *Glock v. Howard & W. Colony Co.,* 123 Cal. 1, 55 P. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17.' "

Upon reason, then, as well as upon authority, we have no hesitancy in adopting the rule that an insufficient or invalid attempt to declare a forfeiture does

not amount to an election or an offer to rescind, but that such ineffectual attempt is wholly abortive, leaving the contract in all respects as it was before. Under the facts of this case, we disregard all such ineffectual and invalid efforts to forfeit; and therefore find that, on August 5, 1932, the contract was a subsisting one, and the vendee's interest, because of its defaults, was then liable to forfeiture by a demand for payment accompanied by the tender of a good and sufficient deed. That a demand was then made, accompanied by a sufficient tender of deed, is admitted by the pleadings, as well as established by the evidence.

The trial court failed to find that there had been any extension of time, and no error is assigned with respect thereto. It follows that the judgment appealed from is right, and it is therefore affirmed.

BEALS, C. J., STEINERT, BLAKE, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—On March 25, 1927, defendant vendee entered into a contract with plaintiff vendor for the purchase of certain land in King county. The contract provided for payments of the purchase price in installments, and for delivery of deed to the vendee on payment of the last installment. Time was made the essence of the contract, which further provided for cancellation of the contract and the forfeiture of the vendee's rights thereunder in the event the vendee breached any of the terms of the contract. The pertinent stipulations read as follows:

"The seller agrees, on full payment of said purchase price in manner hereinbefore specified, to make, execute, and deliver to the purchaser a good and sufficient deed of said described premises.

"Time is of the essence of this contract, and in case the purchaser shall fail to make any payment of the said purchase price, promptly at the time the same

shall fall due as hereinbefore specified, or promptly to perform any covenant or agreement aforesaid, the seller may elect to declare a forfeiture and cancellation of this contract, and upon such election being made all rights of the purchaser hereunder shall cease and determine, and any payments theretofore made hereunder by the purchaser shall be retained by the seller in liquidation of all damages sustained by reason of such failure, and no waiver by the seller of any default on the part of the purchaser shall be construed as a waiver of any subsequent default.''

On May 2, 1932, at which time the final payment due March 25, 1932, had not been paid and the vendee had failed to pay interest and two years' taxes, the vendor notified the vendee of her election to declare a forfeiture and cancellation of the contract, effective May 12, 1932, unless the vendee paid the amounts due. That letter reads as follows:

''You are hereby notified that you are in default . . . in that you have failed to pay the taxes, interest, and the principal payment due March 25, 1932.

''You are further notified that unless you pay said sums on or before May 12, 1932, the seller will elect and does hereby elect to declare a forfeiture and cancellation of said contract and of all of your rights thereunder.''

Early in August, 1932, more than two months subsequent to date of notice of forfeiture of the contract, the vendor tendered to the vendee, who rejected same and refused to pay the balance due under the contract, a deed to the subject-matter of the contract. A few days later, this action, based upon the forfeiture notice given in May, 1932, tender of deed and demand for, and refusal of, payment of balance due, was instituted against the vendee by the vendor, who prayed ''said contract be cancelled and terminated'' and that title to the land in question be quieted in her.

By amended answer, the vendee admitted receipt of notice of intention to declare a forfeiture, and further admitted that, thereafter, the vendor tendered a deed to the vendee and demanded payment of the balance due under the contract. Defendant vendee also set up three affirmative defenses and a cross-complaint. The first affirmative defense pleaded was an extension of time for payment. The second affirmative defense alleged that, at the time of the demand on May 2, 1932, and service of notice of intention to declare a forfeiture, and on May 12, 1932, the date on which the forfeiture was to occur, plaintiff vendor did not tender to defendant vendee any deed to the premises. For a third affirmative defense, defendant vendee alleged that the tender of deed and demand for balance due made August 5, 1932, constituted an election on the part of plaintiff vendor to waive notice of forfeiture. By its cross-complaint, in which it prayed recovery of the full amount paid by it on the purchase price of the property, defendant vendee alleged that, if plaintiff's tender of deed and demand for payment on August 5, 1932, did not constitute a waiver of notice of forfeiture, it elected to treat the contract as mutually rescinded by reason of plaintiff's acts set forth in the first and second affirmative defenses of defendant vendee's answer.

Plaintiff filed a demurrer to defendant's affirmative defenses and cross-complaint. Joined with her demurrer was plaintiff's motion to strike the affirmative defenses and cross-complaint, and to require defendant to elect "as to whether it claims the right to purchase the property in the complaint described or the right to recover payments made under the contract." Plaintiff also moved that, in the event the foregoing motions and demurrer were denied, the defendant be

required to make its first affirmative defense more definite and certain by setting forth the various dates to which payment was extended.

Hearing before a court commissioner resulted in overruling of the demurrer, denial of the motion to strike the cross-complaint, and granting of the motion to make the first affirmative defense more definite and certain. Written notice was served by defendant on the plaintiff

" . . . that it elects to and does hereby abandon the first affirmative defense in the amended answer, affirmative defense and cross-complaint heretofore served and filed in this action and consisting of three paragraphs and further abandons that portion of the second affirmative defense reading as follows:

" 'Defendant herewith refers to paragraph I, II and III of its affirmative defense and makes them respectively paragraphs I, II and III hereof, as though fully set forth herein.'

"This election and abandonment is in compliance and accordance with the ruling made by the Hon. Chester A. Batchelor, one of the Judges of the above entitled court upon the motion of the plaintiff herein for the revision of the order of the Court Commissioner heretofore entered in this cause upon the motion to strike answer and for default of the defendant."

That is to say, the defendant abandoned the defense of extension of time of payment, and stood on its second affirmative defense,

"That at the time of the demand on May 2, 1932, and service of notice of intention to declare a forfeiture unless the defendant paid the taxes, interest and all of the unpaid principal on said contract, the plaintiff did not tender to the defendant any deed to said premises, nor was there such tender made on or prior to May 12, 1932, the date on which said forfeiture was to occur."

No mention is made in defendant's notice of election above quoted of the third affirmative defense that

plaintiff's tender, on August 5, 1932, of deed and demand for payment of balance due under the contract constituted an election by plaintiff to waive the notice of forfeiture given to the defendant in May, 1932.

When the cause was called for trial, counsel for defense stated that defendant had withdrawn its first affirmative defense,

" . . . but claims that the contract between the plaintiff and defendant was wrongfully terminated by the plaintiff, and that because of such wrongful termination the defendant elects to declare the contract mutually rescinded and is demanding that the plaintiff return to the defendant all of the payments made by it, on the ground that the contract has been mutually rescinded."

Counsel for plaintiff stated that, as the cross-complaint was stricken by the court commissioner, the question—the issue raised by the cross-complaint—of the right of the defendant to the return of the payments made to the plaintiff on the contract was not before the court. An examination of the record disclosing that the cross-complaint was stricken by the court commissioner, counsel for defendant asked leave to amend its answer as set forth in the above-quoted statement, as counsel

" . . . was not aware until the case was called for trial a moment ago that the cross-complaint had been stricken, but I am satisfied that the court commissioner was in error in striking it and now ask that we be permitted to amend our answer by setting up this cross-complaint, and that we be permitted to offer evidence in support thereof."

"By the Court: It is barely possible Mr. Froude that the Court Commissioner should not have stricken the cross-complaint. The record shows that he overruled the demurrer to it and that there is an order entered striking the cross-complaint, but I do not like to interfere with that order at this time.

"By Mr. Froude: Yes, I will admit that the record shows that the cross-complaint had been stricken by the Court Commissioner, but I was not aware of that until a few moments ago. I think the court could properly at this time permit the cross-complaint to be reinstated.

"By the Court: I do not think I will interfere with the order of the Court Commissioner.

"By Mr. Froude: Will Your Honor enter an order that our motion to amend the answer by setting up this cross-complaint is denied, but is without prejudice to our right to maintain a separate action upon such claim, if we desire to do so?

"By the Court: Yes, the record will show that I deny your motion to amend your answer but that it shall be without prejudice to the right of the defendant to bring a separate action to recover upon the theory of a mutual rescission."

Defendant's request, repeated at the conclusion of plaintiff's case, to interpose the cross-complaint was denied. At the conclusion of the trial, the court said:

"It seems to me that no harm will be done to either party if this case is postponed thirty days. I am therefore going to postpone consideration of this case for a period of thirty days and see what develops during that period. If during that time the balance of the purchase price is not paid, or some other adjustment made between the parties, I will enter judgment for the plaintiff at that time."

Plaintiff was not willing to abandon the position she had taken that the contract had been cancelled and all rights of defendant thereunder had been forfeited. Defendant was unwilling to recede from its position that the contract had been mutually rescinded. Negotiations were fruitless. At the end of the thirty-day period, the trial court found:

"That defendant has failed and refused to comply with the terms of said contract of sale and has neglected to make the payments therein provided at the

times therein stated, or at all, and all of the payments which defendant agreed to make were past due prior to the bringing of this action and the time within which defendant might make said payments and receive deed to said property had elapsed. That time of payment was of the essence of said contract. . . .

"That in May, 1932, there were taxes upon said property for two years unpaid and delinquent and the taxes thereon for 1931 were unpaid, interest in the sum of $330 was due under said contract and unpaid, and $11,000 of the principal of said contract was due and unpaid, and plaintiff notified defendant in writing that unless the amounts due under said contract were paid on or before May 12, 1932, plaintiff elected to declare a forfeiture and cancellation of said contract. That defendant neglected and refused to pay said sums or the balance due upon said contract. That plaintiff has offered and tendered conveyance of said property to defendant as in said contract provided and has demanded of defendant payment of the balance due under said contract."

Based on the foregoing findings, the trial court entered judgment terminating and canceling the contract, quieting title to the property in question in the plaintiff and forfeiting to plaintiff all payments made by defendant to plaintiff under the contract. From that judgment, the defendant has appealed.

Appellant's second affirmative defense and its cross-complaint were consistent with each other, and the trial court should have permitted the appellant to interpose the cross-complaint. If, as the second affirmative defense alleges and the undisputed evidence establishes, the deed was not tendered as the law requires, appellant was entitled, as it sought by its cross-complaint, to a judgment for the amount paid by it to respondent prior to the termination of the contract in May, 1932. The determinative question in the case was whether there was a tender of deed and demand for payment of balance due when respondent elected

to declare a forfeiture of the contract. The facts are summarized as follows:

Appellant vendee entered into a contract with respondent vendor for the purchase of real estate. That contract stipulated for the payment of the purchase price in installments and for delivery of a deed on the payment of the last installment. Time was made the essence of the contract, and it was agreed between the parties that, in the event of the breach by the vendee of any of the terms of the contract, the vendor could declare a forfeiture of the contract and retain all payments made by the vendee on the contract.

On May 2, 1932, the final payment under the contract was overdue, and interest and taxes were unpaid. On that date, the vendor gave written notice to the vendee that, unless within ten days it paid the balance due, the vendor "will elect and does hereby elect to declare a forfeiture and cancellation of said contract and of all of your rights thereunder." Not until more than two months thereafter did the vendor tender a deed to the vendee. Rejection by the vendee of the deed and refusal to pay the balance due was followed by this action, trial of which resulted in favor of respondent, as recited above.

A contract for the purchase of real estate, which stipulates for payments of the price in installments, and for the delivery of the deed on the payment of the last installment, makes the making of the last payment and the delivery of the deed mutual, concurrent and dependent obligations, within the rule that, where such obligations exist, neither party can put the other in default or claim a forfeiture without first tendering performance on his part. *Christy v. Baiocchi,* 53 Wash. 644, 102 Pac. 752; *Lewis v. Wellard,* 62 Wash. 590, 114 Pac. 455; *Bendon v. Parfit,* 74 Wash. 645, 134 Pac. 185.

A tender of the deed and payment of the last install-
ment are dependent and concurrent. The tender of
the deed is as much a part of the contract as the pay-
ment of the last installment, therefore the vendor can
not enforce a forfeiture without tender of performance
on his part. *Reese v. Westfield,* 56 Wash. 415, 105 Pac.
837, 28 L. R. A. (N. S.) 956; *Carter v. Miller,* 155
Wash. 14, 283 Pac. 470; *Weisberger v. Smith,* 175
Wash. 292, 27 P. (2d) 324; *Stusser v. Gottstein,* 178
Wash. 360, 35 P. (2d) 5.

"If the case of *Stein v. Waddell* and the succeeding
cases to which we have referred have been hitherto
misunderstood, we desire now, for the sake of cer-
tainty, to lay down the rule that, where land is sold
under a time contract calling for payment by install-
ments, and every installment has been paid except the
last one, the vendor may, if he act with reasonable
promptness, declare a forfeiture, unless by the terms
of the contract he has agreed to perform some act
necessary to the complete performance of his agree-
ment, as, for instance, the giving of an abstract or the
tender of a deed, in which event his power to forfeit
depends upon his offer and ability to perform; for, as
this court has said, his duty to tender performance
depends upon, and is concurrent with, the duty of the
vendee to meet the final payment.

"While we admit that the conditions providing for
forfeiture in contracts of this character are usually
held to be for the benefit of the vendor, and we have
been hitherto, and are now, willing to give the vendor
the full benefit of all the conditions of his contract,
and say that all payments prior to the last payment
are conditions precedent, we have no sympathy with
the holding of some courts to the effect that the whole
duty is upon the purchaser, and unless he tenders the
last payment the vendor is entirely released from any
obligation to convey or tender conveyance. The cov-
enants are independent so long as no duty is imposed
on the vendor, but if any covenant puts both parties to
action and concurs in time, it must be held to be de-
pendent and concurrent. It seems that the logical

sequence of the rule allowing a forfeiture for intermediate payments without tender of performance is that the last payment should not be forthcoming until the abstract and deed are tendered, when it is so provided in the contract; for it is primary law that a failure of title will relieve the vendee. Warvelle, Vendors, 813.

"There is nothing in the assertion that any other rule will interfere with, or destroy, or invite a breach of, the contract as the parties have made it. What we have undertaken to show is that a tender of performance when stipulated in the agreement, as well as a tender of payment, is a part of the contract; the two engagements make the contract; the one is dependent on the other." *Reese v. Westfield,* 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956.

"Where covenants are dependent and concurrent, neither party may compel performance by the other without performance on his own part; and where either takes the initiative to compel performance by the other, he must show that he has first made proper tender of that which was to be performed by him." *Stusser v. Gottstein,* 178 Wash. 360, 35 P. (2d) 5.

Where the execution and delivery of the deed are to be contemporaneous with the payment of the balance of the purchase price, the vendor can not put the vendee in default until he tenders a proper conveyance and demands payment of the purchase price, though time is made of the essence of the contract and the vendor is given the right to forfeit the contract and retain what has already been paid.

"Where by the terms of the contract time is of the essence thereof, and the giving of a deed and the payment of the purchase money are not mutual, concurrent, and dependent covenants, the tender of a deed is not a condition precedent to the right of the vendor to rescind the contract for nonpayment of the purchase money or an installment thereof at the time stipulated. But, where by the terms of the contract the covenants for conveyance and payment of the purchase price are

concurrent, mutual, and dependent, the vendor cannot rescind for nonpayment of the purchase money at the time stipulated unless he tenders a conveyance in accordance with the provisions of the contract, and demands performance of the purchaser; but a tender of a deed and a demand for payment, although subsequent to the date specified in the contract, entitle the vendor to forfeit the contract.'' 66 C. J., p. 760, § 345.

After the vendor's election to rescind or cancel the contract and her notice of intention, the contract was terminated. When she elected to forfeit the contract and failed to tender a deed, she breached a covenant of the contract, and her attempted forfeiture constituted a wrongful termination of the contract. Such wrongful termination of the contract entitled the vendee to specific performance of the contract on its tender of performance, or to recovery from the vendor of the amounts paid on the contract prior to date of such termination of the contract. The rights of the parties were fixed May 12, 1932, the date the forfeiture became effective. A subsequent tender of deed could not divest the vendee of its rights fixed at that time.

I repeat, the covenant to pay and the covenant to deliver the deed were mutual and concurrent, hence a forfeiture could not be declared without a deed first being tendered and demand made for payment of balance due on the contract. The contract was terminated, and the amount paid by the vendee under its provisions was not forfeited. That being so, the vendee's right to recovery of that sum follows as a matter of course. The following language in *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464, where we affirmed a judgment in favor of a vendee in an action to recover payments made upon a real estate contract which had been wrongfully forfeited, is applicable in the case at bar:

''The appellants urge that, though there had been no forfeiture, the respondent was not entitled to a

rescission and to a recovery of her payments because she herself was in default and made no tender of payment. While the evidence of tender of the amount due on both contracts was not convincing, it seems clear that a tender was offered as to the larger contract and refused. But we consider the question of tender immaterial. The appellants, having withdrawn the contracts from escrow, without right and while they were in no position to have performed the contracts themselves, by a conveyance of the property free from incumbrance, had, in effect, rescinded the contracts on their own part. They cannot complain that the respondent accepted that act as a rescission on their part and claimed the right to a return of the money which she had paid. Having repudiated the contract without right, they cannot complain that the respondent met them on the ground which they themselves had elected to occupy. Having themselves rescinded the contract, the respondent was relieved from an offer of performance on her part. We have held, in a case where a vendor had himself repudiated the contract, that a tender of performance by the vendee was not a condition precedent to an action for specific performance. *Bruggemann v. Converse,* 47 Wash. 581, 92 Pac. 429. *A fortiori,* it would seem that, under like circumstances, a tender of performance by a vendee is not a condition precedent to the maintenance of an action for a return of the purchase money paid.''

See, also, *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257; *Cornely v. Campbell,* 95 Ore. 345, 186 Pac. 563, 187 Pac. 1103; *Maffet v. Oregon & C. R. Co.,* 46 Ore. 443, 80 Pac. 489.

The rights of the appellant vendee and respondent vendor were fixed on May 12, 1932, the date the forfeiture declared by respondent became effective. Subsequent withdrawal by respondent of that declaration or a later tender by her of deed would not operate to divest the appellant of its rights under the contract.

''Treating the defendant's [respondent vendor's] declaration that the contract is canceled, and no longer

of any force or effect, as an abandonment, the plaintiff might himself abandon, and, the contract having thus come to an end, he might very well, as he has done, sue at law to recover what he has paid. *Glock v. Howard & W. Colony Co.,* 123 Cal. 1, 10 (55 Pac. 713, 719, 43 L. R. A. 199, 69 Am. St. Rep. 17). Mr. Justice Henshaw, in further consideration of this case, says: 'There have been many cases before this court involving the rights of parties to agreements for the sale and purchase of real estate, in which it has been held that, after the parties have rescinded the agreement or mutually agreed to abandon, the vendee may recover the money which he paid in part performance of his contract'; citing cases. This court, however, has settled the principle by the language of Mr. Chief Justice Moore in *Graham v. Merchant,* 43 Or. 294, 304 (72 Pac. 1088, 1090), as follows: 'When a vendor abandons his contract to convey, the vendee, in his choice of remedies, may elect to rescind the contract, and thereupon maintain an action at law to recover what he has paid thereon as money had and received.' Thus it is that an abandonment by one party may be treated as a proposition to rescind by the other, and thereupon he may also abandon, and thus arrive at a mutual agreement to rescind, and the law so treats the correlative acts of the parties: 2 Warvelle, Vendors (2 ed.), § 826; *Cummings v. Rogers,* 36 Minn. 317 (30 N. W. 892); *Wheelden v. Fiske,* 50 N. H. 125.'' *Maffet v. Oregon & C. R. Co.,* 46 Ore. 443, 80 Pac. 489.

See, also, *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257.

We should be mindful of rules of law and endeavor to adhere thereto, rather than attempt to rescue persons in a given case from a situation in which they find themselves because of their failure to abide by the terms of their contracts.

It is the general rule, and one to which we are committed, that, when the covenants to convey and to pay are dependent, a tender of a conveyance is necessary to an action for the purchase price. Not only must the

tender be made before the commencement of an action to enforce the terms of the contract, but the tender must be made as the contract provides. Where neither party offers to perform or demands performance at the time specified, both parties are in default. In such case, the vendee, to be entitled to rescind the contract and to recover the purchase money, must tender the balance due and demand a conveyance of the premises. The vendor, to be entitled to terminate the contract and keep the land and all payments made on the purchase price by the vendee, must tender to the vendee a conveyance of the premises and demand payment of the amount due on the contract. If the vendor, as in the case at bar, elects, under the forfeiture provision of the contract, to terminate the contract and keep the land and the payments made thereon, and at the time of such declaration of forfeiture fails to tender a deed and demand payment of the balance due under the contract, the vendee is entitled to an accounting for the amount paid on the purchase price, but the vendee would not be entitled to such accounting if the vendor tendered performance of the contract and brought an action to compel its specific performance.

The failure to tender a conveyance at the time of declaration of forfeiture constitutes a rescission, and not a mere enforcement of the forfeiture provision of the contract. The vendor in such case treats the contract as abandoned by the vendee, and the purchase money received by him as forfeited. If proper notice of forfeiture (deed tendered, etc.,) had been given by the vendor, the rights of the vendee under the contract, in view of its default, would have been so fixed that the vendee could not, after the forfeiture date, by a tender of the balance due on the purchase price, put the vendor to her election either to perform or account for the amount paid on the purchase price. In the case

at bar, the vendor breached the terms of the contract. She rescinded the contract, in which rescission or termination the vendee acquiesced; therefore, the vendor should be required to account to the vendee for the amount received on the purchase price.

The trial court carefully saved to appellant the right "to bring a separate action to recover upon the theory of a mutual rescission." The trial court erroneously refused to permit the interposition of appellant's cross-complaint. The cause should be remanded, with direction to the trial court to determine the amount paid by appellant on the contract and to enter judgment in appellant's favor therefor.

MAIN, MITCHELL, and HOLCOMB, JJ., concur with MILLARD, J.